# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| ASSET RESOLUTION, LLC et al., | ) |
| Plaintiffs, | ) |
| | ) 2:09-cv-01832-RCJ-GWF |
| vs. | ) |
| | ) |
| EDWARD SCHOONOVER et al., | ) **ORDER** |
| | ) |
| Defendants. | ) |

This case arises out of Plaintiffs' state law action asserting claims against more than two thousand defendants, sixty-eight of which are parties in another case pending before the Court, *3685 San Fernando Lenders, LLC et al. v. Compass USA SPE, LLC et al.*, No. 2:07-cv-00892-RCJ-GWF ("*Compass I*"). Plaintiffs in the present case ("*Compass II*") are defendants in *Compass I*. Pending before the Court is Defendants' Motion to Dismiss or, in the Alternative, to Stay Removed State Court Complaint (#7).[1] Plaintiffs have filed a Response (#14). For the reasons given herein, the Court grants the Motion to Dismiss (#7).

## I.    FACTS AND PROCEDURAL HISTORY

*Compass I* is a complex piece of litigation, but it is necessary to recount its background to understand *Compass II*. USA Commercial Mortgage Co. ("USA Commercial") was a loan servicing company that went bankrupt. At an auction pursuant to those bankruptcy proceedings, Compass

---

[1] All Clerk's Record numbers indicate citation to the record in the present case, *Compass II*, unless otherwise noted.

USA SPE, LLC ("Compass") purchased USA Commercial's interest in thousands of Loan Servicing Agreements ("LSA"). Those LSAs were contracts between USA Commercial and various financial institutions ("Direct Lenders") that had lent money for the purchase of commercial real estate. The LSAs gave USA Commercial the right to administer the loans on behalf of the Direct Lenders. Silar Advisors, LP and Silar Special Opportunities Fund, LP (collectively, "Silar") financed Compass' purchase of the LSAs, retaining a security interest in the LSAs. Silar later assigned the loan and corresponding security interest in the LSAs to Asset Resolution LLC ("Asset Resolution"), an entity created and owned by Silar for this purpose. Asset Resolution eventually foreclosed on the LSAs.

Certain Direct Lenders subsequently formed various companies ("the LLCs"), who sued Compass in this Court to determine their rights and obligations under the LSAs and for various torts.[2] Asset Resolution and Silar intervened, and soon thereafter they filed an Amended Answer to the Second Amended Complaint and Asset Resolution, LLC's Counterclaims. (#912). Those counterclaims, brought against approximately sixty-five Counterdefendants, (*see id.* at 22–23), were for declaratory judgment, breach of contract, breach of the covenant of good faith and fair dealing, permanent injunction, and quantum meruit, (*id.* at 41–45). On August 13, 2009, the Court gave Asset Resolution fifteen days to amend its counterclaims to include "specific allegations as to the allegedly wrongful conduct of the JV Direct Lenders." (*Compass I*, #1384 at 2:12–13). Eighteen days later, Asset Resolution and Silar filed their Second Amended Answer and Counterclaim to Second Amended Complaint (*Compass I*, #1447). That amendment added no new counterclaims.

In the meantime, on August 28, 2009, Asset Resolution and Silar had filed *Compass II* in the District Court of Clark County. (#1-3). *Compass II* arises out of the same nucleus of operative facts and the same series of transactions as *Compass I*, such that the tests for supplemental jurisdiction

---

[2] The Third Amended Complaint asserts claims against Compass, Silar, Asset Resolution, David Blatt, and Boris Piskun for declaratory relief, breach of contract, breach of fiduciary duty, breach of the implied covenant of good faith and fair dealing, fraud, conversion, civil conspiracy, and constructive trust. (*Compass I*, #1360-2).

and compulsory counterclaims are unarguably both satisfied. The causes of action brought in *Compass II* are for declaratory judgment, breach of contract, breach of the covenant of good faith and fair dealing, civil conspiracy, "Concert of Action," conversion, intentional interference with contractual relationships, and "Alter Ego Liability." (*Id.*).

Defendant Edward Schoonover removed *Compass II* to this Court based on 28 U.S.C. § 1334(b). Defendants have now moved to dismiss or stay *Compass II*, arguing that the Court does not have subject matter jurisdiction over the *Compass II* claims because they are duplicative of the counterclaims in *Compass I*. Plaintiffs respond that the claims are not duplicative, and in any case, if there is no subject matter jurisdiction, the Court must remand. Accordingly, Plaintiffs have also filed a Motion to Remand (#15).

Further complicating matters, on October 14, 2009, Asset Resolution and Silar filed a Notice of Commencement of Chapter 11 Bankruptcy Cases (*Compass I*, #1547), indicating that Asset Resolution, but not Silar itself, had filed for Chapter 11 bankruptcy in the United States Bankruptcy Court for the Southern District of New York. On November 24, after oral argument on the present Motion (#7), the Bankruptcy Court for the Southern District of New York granted Asset Resolution's motion for transfer of venue, transferring the bankruptcy action to the Bankruptcy Court for the District of Nevada. (#22-1 at 13).

## II.     LEGAL STANDARDS

### A.     Subject Matter Jurisdiction

Federal courts are courts of limited jurisdiction, possessing only those powers granted by the Constitution and statute. *See United States v. Marks*, 530 F.3d 799, 810 (9th Cir. 2008) (citing *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)). The party asserting federal jurisdiction bears the burden of overcoming the presumption against it. *Kokkonen*, 511 U.S. at 377. Federal Rule of Civil Procedure 12(b)(1) provides an affirmative defense for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). Additionally, a court may raise the question of subject matter

jurisdiction *sua sponte* at any time during an action. *United States v. Moreno-Morillo*, 334 F.3d 819, 830 (9th Cir. 2003). Regardless of who raises the issue, "when a federal court concludes that it lacks subject-matter jurisdiction, the court must dismiss the complaint in its entirety." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006) (citing 16 J. Moore et al., Moore's Federal Practice § 106.66[1], pp. 106-88 to 106-89 (3d ed. 2005)).

The most common sources of federal jurisdiction in the district courts are the statutes creating federal question jurisdiction and diversity jurisdiction. *See* 28 U.S.C. §§ 1331–32. But there are other statutes creating federal jurisdiction, as well. For example, "the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(b).

> Proceedings "related to" the bankruptcy include (1) causes of action owned by the debtor which become property of the estate pursuant to 11 U.S.C. § 541, and (2) suits between third parties which have an effect on the bankruptcy estate . . . . The first type of "related to" proceeding involves a claim like the state-law breach of contract action at issue in *Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982).

*Vacation Village, Inc. v. Clark County, Nev.*, 497 F.3d 902, 911 (9th Cir. 2007) (quoting *Celotex Corp. v. Edwards*, 514 U.S. 300, 307 (1995)). Section 541 makes part of the estate, *inter alia*, "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). "[P]ending causes of action qualify as 'property of the estate' in bankruptcy under 11 U.S.C. § 541(a)(1)—including causes of action sounding in tort, such as personal injury, for which the ultimate amount of recovery is uncertain." *Ileto v. Glock, Inc.*, 565 F.3d 1126, 1148 n.1 (9th Cir. 2009). Furthermore, "'[T]he district court in which the bankruptcy case is commenced obtains exclusive in rem jurisdiction over all of the property in the estate.' A chose in action is property of the bankruptcy estate pursuant to 11 U.S.C. § 541(a)(1). For this reason, only bankruptcy trustees, debtors-in-possession, or bankruptcy court authorized entities have standing to sue on behalf of the estate." *McGuire v. United States*, 550 F.3d 903, 914 (9th Cir. 2008) (citations omitted).

In removed cases, "[i]f at any time before final judgment, it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c). A district court's dismissal for lack of subject matter jurisdiction is reviewed de novo. *Ass'n of Am. Med. Colls. v. United States*, 217 F.3d 770, 778 (9th Cir. 2000).

### B.   Compulsory Counterclaims

In the interest of judicial economy, the Federal Rules of Civil Procedure provide: "A pleading must state as a counterclaim any claim that—at the time of its service—the pleader has against an opposing party if the claim: (A) arises out of the transaction or occurrence that is the subject matter of the opposing party's claim; and (B) does not require adding another party over whom the court cannot acquire jurisdiction." Fed. R. Civ. P. 13(a)(1)(A)–(B). Federal courts have supplemental jurisdiction over compulsory counterclaims without any independent basis for jurisdiction. *See, e.g.*, *Marine Transp. Servs. Sea-Barge Group v. Python High Performance Marine Corp.*, 16 F.3d 1133, 1139 (11th Cir. 1994); *see also* Shay S. Scott, *Supplemental Jurisdiction Under 28 U.S.C. § 1367*, 72 Or. L. Rev. 695, 701 (1993) (citing Fed. R. Civ. P. 13(a); *Koufakis v. Carvel*, 425 F.2d 892, 899 (2d Cir. 1970)).

## III.   ANALYSIS

Defendants ask the Court to dismiss or stay *Compass II* for lack of subject matter jurisdiction because the case is duplicative of *Compass I*. Asset Resolutions and Silar respond that there are additional state law claims and defendants in *Compass II*, making *Compass II* at most only partially duplicative of *Compass I*. They also argue that if the Court determines there is no jurisdiction, it must remand. Defendants are correct that the Court should dismiss *Compass II*, but it is not because the Court lacks jurisdiction. The Court has jurisdiction over Plaintiffs' claims in *Compass II* pursuant to both 28 U.S.C. § 1334(b) and § 1367. Silar is not in bankruptcy, and Asset Resolution's own claims are not stayed. Only claims against Asset Resolution's assets are stayed. Moreover, the bankruptcy has now been transferred to this District, giving this Court exclusive in rem jurisdiction

over Asset Resolution's property. The Court will dismiss *Compass II* not because it lacks jurisdiction, but because the claims therein are compulsory counterclaims in another case pending in this Court: *Compass I*.

Wright, Miller, and Kane note that the appropriate course of action under the present fact pattern "remains unsettled," but they offer a suggestion based on past federal practice: "Ideally, once a court becomes aware that an action on its docket involves a claim that should be a compulsory counterclaim in another pending federal suit, it will stay its own proceedings or will dismiss the claim with leave to plead it in the prior action." 6 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1418 (2d ed. 1990) (citations omitted).[3] When claims are brought in state court that are compulsory counterclaims in a pending federal action, the federal court cannot enjoin the state proceedings unless necessary to protect its jurisdiction over a res; both cases should proceed, and the first to conclude will preclude the claims or counterclaims in the other action. *Id.* Such is not the case here, because *Compass II* has been removed, and the Court has jurisdiction over it pursuant to § 1334(b). The claims in *Compass II* are compulsory counterclaims in *Compass I*, because they all "arise[] out of the transaction or occurrence that is the subject matter of the opposing party's claim," i.e., the LSAs and the transactions surrounding them. Fed. R. Civ. P. 13(a)(1)(A).

Although Silar argues at length that the claims in *Compass II* are not duplicative of those in *Compass I* because *Compass II* includes additional parties and additional causes of action, (#14 at 5:2–3 (citing *Adams v. Cal. Dep't of Health Servs.*, 487 F.3d 684, 689 (9th Cir. 2007)), this misses the point. The relevant question is whether the claims in *Compass II* are compulsory counterclaims

---

[3]This is the case here, and Defendants ask the Court in the present Motion (#7) to choose between the two courses of action that Wright, Miller, and Kane suggest.

in *Compass I*.[4] Claims in a second action need not be duplicative of those in a first action in order to be compulsory counterclaims in the first action. Claim preclusion and the compulsory counterclaim rule are related tools designed to increase judicial efficiency, but they are not the same thing. *Adams* was a claim-splitting case involving a plaintiff who filed a second action after a district court had denied her motion to amend her complaint in the first action. *See id.* at 687. The *Adams* court did not even mention the compulsory counterclaim rule, which is a separate tool to vindicate the aims of judicial efficiency apart from the anti-claim-splitting rule. Claim splitting is a sufficient, but not a necessary, reason for a district court to dismiss a second action in favor of a related first one.

Here, the Court granted Silar the right to amend its counterclaims in *Compass I*. The problem here is not claim splitting, but the compulsory counterclaim rule. Even assuming, *arguendo*, that the *Compass II* claims are not duplicative of the *Compass I* counterclaims, this does not affect the propriety of dismissal of *Compass II* in favor of requiring Silar to plead those claims as counterclaims in *Compass I*. If Defendants asked this Court to enjoin *Compass II* while it was pending in state court, the Court would have to address additional issues, but as it stands, *Compass II* has been properly removed, and it would be totally superfluous and wasteful for the Court to hear a separate case involving only claims that are compulsory counterclaims in another case already pending in front of it. This Court will decide all of the claims, whether maintained in the same case or in two separate cases. There is no legitimate reason to maintain separate cases.

## CONCLUSION

IT IS HEREBY ORDERED that the Motion to Dismiss (#7) is GRANTED and the Motion to Remand (#15) is DENIED as moot. Asset Resolution and Silar are granted fourteen (14) days

---

[4] Silar does not argue that the claims in *Compass II* are not compulsory counterclaims in *Compass I*, because it could not plausibly argue this. Rather, Silar attempts to draw the Court's attention to the inapposite issue of claim-splitting.

from the date of this order to amend their counterclaims in Case No. 2:07-cv-00892-RCJ-GWF one final time. The Clerk will enter this order into Docket No. 2:07-cv-00892-RCJ-GWF, as well.

DATED: December 15, 2009

_____
Robert C. Jones
United States District Judge